All right, then we're ready to call our next case. Arcos Sanchez v. Attorney General. And we have Mr. Gonzales, Mr. Hogan here with us. So we'll go ahead and ask you to proceed, Mr. Gonzales, for the petitioner. Good morning, Your Honor. I respectfully request five minutes. Done. Thank you, Your Honor. Our question here today is whether the immigration judges and the Board of Immigration Appeals have the ability, the authority to administratively close cases. I'd like to first say that what administrative closure is not, and we would submit that it's not a part of the the EOIR backlog. Backlog reflects active cases. The administratively closed cases are cases that go to the side. And in addressing that, why do I raise it? It's because I think it's a valuable tool that has been helpful to the immigration judges that are the experts. They're the soldiers, they're the plumbers, they're the guys right at the front line, and the Board of Immigration Appeals who have to deal with the second level of these cases. Well, I'm sure I don't think anybody's arguing that the immigration judges don't like it, right? I think the argument, nor that it administratively could be a useful tool for them to have, Mr. Gonzales. I think what we're hearing from the other side is that the Castro-Tum decision is something that the Attorney General certainly had the power to do because it is peculiarly within the purview of the executive branch to decide how to process cases. And that processing decision, whether or not you can administratively close or not, is something that the Attorney General is free to opine about and to say, no, you don't get to do this. I don't think you're allowed to do this. Now, I understand your argument, which is, no, the regs say that you can do this, but would you concede or do you concede that there's some ambiguity or do you say that there's no ambiguity at all in the regulations? I think, oddly enough, I may agree with my adversary in that Kaiser applies and we say there is no ambiguity. And as a result, there should be no deference. So here we find yourself in an interesting spot, don't you, Mr. Gonzales? If that's true, how do we account for the fact that very well-respected, thoughtful judges come down on both sides of this? You've got Judge Keflage writing for the Sixth Circuit and saying, yeah, this is something that the Attorney General could do. It's within the bounds of the authority of the Attorney General to issue castratum. And you've got now Justice Barrett saying with the Seventh Circuit, no, this is not right. And you get the Fourth Circuit on your side, too. But there you've got a circuit split. Can it really be the case that it's unambiguous when you've got courts on both sides of the issue? Well, our position is that it is not ambiguous because of the language set forth. Exercise their independent judgment and discretion in taking any action. Any action would be anything that's judicial unless it's taken away. And I know the Attorney General has now set forth regulations trying to take that away and take away some other tools that the judges use, immigration judges use, and the board does as well. And you, that has nothing to do with us, right? I mean, I think everybody's, maybe I'm wrong about this. We'll let Mr. Hogan speak to it. But those aren't retroactive, so they don't control here. But you'd certainly concede that with new regulations in place, I mean, I think your whole point was it's these regulations that were in existence at the time that gave IJs the power to do what you say they could do, right? Yes, Ron. Yeah. So can you give me your argument regarding the text then? Because let's assume we agree this is a matter of interpretation. Kaiser applies. What is your textual argument then that this power exists? And ground me not just in the action language, but the fulsome clause of any action consistent with their authorities that is appropriate and necessary for the disposition of cases, right? Because that's got to be relevant to your argument that this power is tied, it seems, to the disposition of cases. So help me understand your textual argument here. Thank you, Your Honor. To get to our disposition, in many cases, something else has to happen that's outside the control of the attorney general and his designees, the board, or an immigration judge. The classic example that's been used in each of the three prior cases decided in the seventh, fourth, and sixth, but most importantly here, is the provisional waiver section. The Department of Homeland Security, one of the parties that goes before the immigration court, their own regulations require for someone to be able to apply for a provisional waiver that the proceedings be administratively closed. Through enforcement rules currently, or at least under the prior administration, prosecutorial discretion and administrative closure requests by the Department of Homeland Security were stopped, were not used as they were in previous administrations. Additionally, there are instances of many times where the disposition can't be done until another agency acts, or another part of the Department of Homeland Security acts. So let me interrupt you there, if I could. Let's suppose that's right, and that there are regulations that require these kinds of pauses. Why is a continuance not sufficient? And I understand that, to your point, an administrative closure may be more desirable from the IJ standpoint. I'm not sure that anyone would disagree with that. But an effectively managed continuance would seem to provide the same sort of relief. So why doesn't that work? Your Honor, with regards to the Board of Immigration Appeals, a continuance, I believe, would be impossible. Only administrative closure would be helpful. There's no continuances absent, perhaps a brief extension that's available before the Board of Immigration Appeals. I have a, well, you've asked, so I'll give my examples. With regards to continuances versus admin closure, an instance where there's a respondent who's now subject to a criminal case, who's detained by another agency, be it the U.S. Marshals, or be it the state, we don't know when his availability is going to be. And that crime, that case is dispositive on his immigration case. We've had that battle specifically here in New Jersey where someone's in removal proceedings, then they have a criminal charge. Sometimes they have to battle to be able to get back into state court to address their case and then be detained there, have their case resolved. But he's detained in state court while still his case is pending before the immigration court. We'd never know. Why can't a continuance handle that? Sometimes it can, Judge, but there's so many variables, especially in the beginning. I understand. I understand that closure could be a more convenient thing, but, well, let me ask you this, Mr. Gonzalez. The regulation 1003.1D1, or excuse me, 1003.10B, that's the one I want to focus on. It talks about taking any action consistent with the authorities on the act and regulations as is appropriate and necessary for the disposition of the case. Is an administrative closure a disposition? No, it is not, Judge. Okay. If that's true, and I think you're right, it's not a disposition, how is it that you can argue that the language, take any action, resolves this when the take any action is specifically geared toward, linked to, the disposition of the case? You're allowed to take any action to dispose of the case. That doesn't mean you're allowed to take any action at all. You're only allowed to take any action that will allow the disposition of the case. I understand the government to be in the argument that these administrative closures are not leading to the disposition. They're actually contrary to it. They go into this limbo and never emerge. What's your response? Well, Your Honor, that is an issue that needs to be asked of Mr. Hogan's other client, which is not a party to this case, it's the Department of Homeland Security. They're the ones that need to, they can control, they can file their own motions to recalendar. These, as can the respondents, the respective respondents in each and every one of these cases. I can't... So you're saying it's on the government, it's the government's fault that they don't seek to get these recalendared? Well, it's, we're talking about two different agencies, and sometimes it is. Yeah. Department of Homeland Security, they have to recalendar their cases. They've done it before. I know as a former government attorney for legacy INS, I administratively closed and I recalendared. Cases have been recalendared here in the Third Circuit when they were, based on prosecutorial discretion, no longer being used as a tool by Homeland Security, they've moved to recalendar cases. Okay. Okay. Judge Mady, any other questions from you, sir? Nothing further. Judge Horan? Just going on that same point, Mr. Gonzalez, if we're talking about the burden on the parties to come forward to recalendar a case, how is the administrative judge or the immigration judge using that tool to manage their calendar? By administratively closing, it seems to me the judge is relinquishing his management of the case to the parties who would have to come back to recalendar it. If it's on the judge's docket by way of a continuance, the judge is managing the disposition and maintenance of that case. I see a difference there in relation to the regs. Your Honor, with a concentration of efficiency and impartial dispositions of cases, the parties ask, at least one party will ask for administrative closure. That allows the judge, the immigration judges, to concentrate on the cases that are prioritized by the Department of Homeland Security to adjudicate. Maybe there should be another instruction to the judges as to how to deal with the administratively closed cases while they're dealing with the backlog of active cases. I understand. It seems to me the regulation we're talking about is focused on disposition of the case at hand, not the management of the entire court docket. It's the disposition of this case at hand. If a case is administratively closed, the only way, according to what I'm hearing you say, the only way it gets back in front of the judge is if one of the parties kicks it back. The judge really loses oversight of that case. In a continuance circumstance, that's where judge continues to have focus on the disposition of that case, even if it's granting another continuance. I need to check my regs as to whether there is a sui sponte power from the immigration judges to re-calendar. I would submit that if there is, they may be taken away by the new practice. You would agree, wouldn't you, that in fact the cases are only re-calendared upon motion and that the party seeking re-calendaring has a burden to show they should be re-calendared. There's a good cause thing in there. That's part of what motivated the Attorney General to do what he did in Castro-Tum, right? Yes, Your Honor. Okay. All right. Well, you've reserved five minutes for rebuttal and we'll certainly have you back on that. Mr. Hogan, we'll hear your argument on behalf of the Attorney General. Yes, good morning. May it please the Court, Brendan Hogan for the Department of Justice. The first point I would just like to bring up is that while the government did argue Kaiser, it was only an alternative argument. Our main argument would be Vermont Yankee and that basically that because there's no constitutional issue or compelling circumstances that would preclude the Attorney General from issuing Castro-Tum, that's the main reason that the Court should affirm it. But turning to the textual... I mean, you can't really avoid Kaiser, can you? I mean, this is the Attorney General giving an interpretation of a regulation. That's exactly Kaiser land, right? And turning to the panel's questions about the regulation, a lot of it we've already discussed is that the agency has already decided that any action is subject to the restrictive clause appropriate and necessary for the disposition of the case. And that's both under 1003.1D and 1003.10B. And the key word there is disposition because it's restrictive. Well, let's pursue that. Let's pursue that. It's the disposition of the case, meaning it appears to mean the case in hand, not caseload generally, right? As Judge Horan's question implied or one could take it. Now, let me ask you, what is inconsistent in saying administrative closure is in fact helpful to the disposition of this case because of the particular circumstances of this case? In other words, Mr. Gonzalez just gave an example of one. You've got parallel proceedings in state court. How those proceedings turn out may very well affect the correct disposition of the immigration case. Nobody knows how long it's going to take, but it's going to take some time. Let's administratively close this, come back when that's done, and then we have a sound basis for proceeding instead of spinning our wheels doing something that doesn't make sense when you get something different out of the state that'll alter the field of play. I take that now. I didn't do as elegant a job as he did in laying out his example, but I take that to be his example. Why isn't something like that exactly geared to the sensible disposition of that case? Because the regulations already provide it for the circumstances you just described. Well, they also, I mean, the fact that you could have a continuance doesn't mean you couldn't have administrative closure. In fact, for 30 years, it was happening. The whole point of this is it was happening so much it was driving the attorney general crazy. Eventually, the attorney general said, you got to stop doing it. It wasn't because the regs didn't allow for it, it seems. Otherwise, you'd have to believe people were asleep at the switch for literally decades. It seems like what the attorney general's problem is, is that an authority that was granted was not being used wisely, right? Isn't that the problem that the attorney general was getting at? You've abused the authority, not that you didn't have the authority, you abused the authority. Isn't that the problem that was being addressed? Well, no, with respect, your honor, in Castro 2, the attorney general went through and looked at how in Madera Abyssinian, which it was one of the cases which laid out what the prior attorney general thought would be the authority for administrative closure, that they described the regulations, but they really didn't go into the authority that allowed for that tool. And if what Castro 2 did is that by looking at the plain language, there is in fact no authority. And as we pointed out in one of our letter briefs, I believe the Supreme Court case was paying the fact that prior attorney generals may have been doing something that they didn't have the authority to do is not a reason to continue to keep doing it. Well, but it could be a reason to look at it and say, maybe at a minimum, maybe there's ambiguity. Is it possible that every attorney general that occupied that office for more than three decades was not just completely misguided and couldn't read the plain language that was so unambiguous as to lead to Castro 2? Maybe at a minimum, there's ambiguity about whether this is suited to the disposition of the case. And if there is, and you're in Kaiserland, then you got to wrestle with the meaning and whether what was done here was in fact something that's due deference. But let me pursue something here. You in your briefing argue that the historically overbroad usage of this closure authority is evidence that the tool is not appropriate and necessary. If I which I really would like you to wrestle with, isn't that an argument that speaks to abuse of authority explicitly, not to absence of authority? As a logical matter, I'm not sure how the level of usage tells us anything about appropriate and necessary. It may tell you that they've got a bad judgment about what's appropriate and necessary, but it doesn't tell you that they don't have the power to do what is appropriate and necessary. Are you following what I'm trying to ask? I might be doing a poor job of it. I think so, Your Honor. But again, that would maybe go back to the discussion that the panel was having with Mr. Gonzales earlier, is that it's not that the power was abused, it's that the power never existed in the first place. And again, it goes back to whether there's a disposition in the case and the discussion that everyone had about recalibrating, excuse me, recalibrating, that's at pages 271 to 272 of Castro-Tum, that basically once the cases were taken off the active docket, they were in limbo, they were gone. So how does that tool help with the disposition of the case? That's the crux. Well, maybe we're talking past each other, but I think you're actually making the point I'm trying to question you about. That's a statement, that's an assertion that, hey, you're using this tool incorrectly. That isn't a statement that you don't have the tool. That's like telling somebody that if you use that screwdriver like it's a hammer, that's a bad thing. But that doesn't mean that they don't actually have the screwdriver. They've got the tool. They may misuse it, but they've got the tool. I'm not sure I follow the logic when the government comes and says, look, IJs have been using this poorly. Don't let them do it anymore. Well, they may be doing it poorly. The answer is to train them to do it correctly or to change the regulation as you have and to take the tool away. But it seems odd to say, yeah, you never had that tool to start with when they've had the tool and they've been banging away with it for three decades. But as we pointed out in our letter reading. Sorry, that was meant as a question. The fact that they're doing it wrong doesn't mean that they don't have the tool that they're misusing, does it? But if they would never have the authority to use the tool in the first place, that's the attorney general's point. Yeah. OK. Well, Judge Mady, do you have anything for Mr. Hogan? Nothing further. Thank you. Judge Horan. Well, all right, then. I don't know whether there's anything further that you'd like to Mr. Hogan, but I don't I don't have any further questions for you unless you're summing up here. No, you're out of the government. All right. Thank you very much, Mr. Gonzalez. Thank you, your honors. I'll try to. I wanted to go back. Of other examples of where administrative closure really is necessary for the ultimate disposition of cases besides US, I think you can go as recent as a case the court decided last week in the coma versus attorney general, where factually we had the respondent was detained. And in removal proceedings, we had to file a mandamus to get an I-130 adjudicated. Now, I don't think there was any issue of administrative closure because there was because the client was detained. But that was an example I wanted to give of the potential of additional bench time, not only for immigration, but for federal court judges and non-immigration judges if there's no administrative closure. Likewise, an example when someone's not available besides my criminal alien, I have members that were in the armed services that are in active duty. That their example I can give is their I-751 is denied or failed to be filed. Placed in removal proceedings. He's not here. He's in Afghanistan. He's at Fort Hood. He's at Paris Island. Is it unreasonable to ask for an administrative closure at that point? Just to interrupt, if I may, let's talk about it in relation to this case and our petitioner in this case. Its necessity in this case. He stands with a pending DACA application. Previously, he had received DACA three times. He was terminated because of the open charge. As the record of proceedings indicate, the charge was no build. He reapplied. We still have no decision. When I talked to the, I forgot the line, something about bureaucratic inefficiencies, defects that were referred to in the Sixth Circuit case. We may have that issue in our client's case because we still don't have a disposition on a DACA case where a DACA renewal for the fourth time or third time is usually resolved in a matter of months. Administrative closure perhaps would help because the files would be in one place. I know, and again, as an officer of the court, I can only say, and it's indicated my client had a fiance at the time of the petition for review and the stay request. While he still does, perhaps a different woman, but she's a U.S. citizen, and it parlays into many things. He would then, once he's married, would be able to be eligible for cancellation of removal, but that would be a remand all the way back to the IJ. But he would then be eligible for that provisional waiver. And with that, if he's eligible for that, then administrative closure would be a necessity. Okay. All right. Thank you very much, Mr. Gonzalez. Thank you. And thank you, Mr. Hogan. Appreciate counsel's time and skill and argument here today. We've got the matter under advisement.